Virginia HUGHES et al., Appellants,

v.

Catherine DWYER, Executrix of the Estate of Lonnie Lance and Catherine Dwyre, Individually, Respondents.

No. KCD 27618.

Missouri Court of Appeals, Kansas City District.

Jan. 31, 1977.

Grace S. Day, St. Joseph, for appellants.

J. W. Roberts, St. Joseph, for respondents.

Before SHANGLER, P. J., and HANNA, O'LEARY and L. SMITH, Special Judges.

FOREST W. HANNA, Special Judge.

Mr. Lonnie Lance executed his will the day after he had been convicted and sentenced to a term of two (2) years in the state penitentiary for arson. On the 20th day of October, 1959, Mr. Lance went to his attorney's office, alone, where he told his attorney what he wanted in his will. It was dictated, typed and signed while he remained at the office, all within an hour or less. Because Mr. Lance could not read or write, the dispositive and disinheriting provisions of the will were read to him before it was signed by his mark. Thereafter, the testator left the attorney's office alone. He was received at the state penitentiary on the 23rd day of October, 1959. After his confinement he returned to Maitland where he resided with Catherine Dwyer until he died on November 4, 1972. He left seven descendants (the plaintiffs) as his legal heirs and each was specifically disinherited by the will. This case was tried as a will contest to a jury and resulted in a verdict in favor of the defendants. The court entered its judgment that the document dated October 20, 1959, was the last will and testament of Lonnie Lance.

■ The plaintiffs raise three points on this appeal. The first issue raised is that the testator was incapable of making and executing a will as his civil rights were

suspended by Section 222.010 RSMo which states:

"A sentence to imprisonment . . . within the state department of corrections for a term of less than life suspends all civil rights of the persons so sentenced during the term thereof . . ."

Upon conviction for a felony the English Common Law assessed the additional penalty of "attainder" which included the concepts of forfeiture, corruption of the blood and civil death. This resulted in the will of a felon being void as to the Crown because the property of such a person was forfeited to the Crown. A partial amelioration of the rigors of the common law doctrine occurred when Missouri abolished forfeiture and corruption of the blood, Section 556.300, RSMo 1969. The concept of civil death has been preserved by Section 222.010 and although there are decisions construing the section there are no decisions specifically ruling whether a convict can make a will. It is evident that the civil death statute, being penal in nature, has received a rigid interpretation from the Missouri courts. But, actions by or against a convict actually imprisoned have been held void when affecting his property rights. *Williams v. Shackleford*, 97 Mo. 322, 11 S.W. 222 (1889) (a deed); *McLaughlin v. McLaughlin*, 228 Mo. 635, 129 S.W. 21 (1910) (a judgment); *Murphy v. Barron*, 275 Mo. 282, 205 S.W. 49 (1918) (a judgment), and *Wamsley v. Snow*, 331 Mo. 261, 53 S.W.2d 258 (1932) (execution levied on property).

Such a result has not been reached when the convict is not in actual confinement. This is in part a result of the courts attempting to harmonize the civil disability statute with the convict's trusteeship statute, Section 460.010, RSMo 1969.

Since the evidence is uncontradicted that Mr. Lance executed his will while he was at liberty and under no confinement and that he was not received at the Missouri State Penitentiary until three days after the execution of the will we must consider the case in that light.

In *Ward v. Morton*, 294 Mo. 408, 242 S.W. 966 (1922) the plaintiff was sentenced to two consecutive sentences and placed on probation. He never served any time under either of the sentences. Plaintiff argued that he was entitled to an interest in certain real property because the judgment rendered against him in a tax suit by the county collector and a warranty deed executed by him to the property were both void for the reason that plaintiff was under sentence to the penitentiary at the time the judgment was rendered and the deed was made. Both of these events occurred while plaintiff was under no actual restraint as to his liberty and the court held that it was plaintiff's duty to protect his own property and the civil death statute was not applicable. This case cites with approval *Harmon v. Bowers*, 78 Kan. 135, 96 P. 51 (1908) where the Kansas civil death statute was almost identical to Missouri's. The Kansas Supreme Court held that the disability statute suspending civil rights did not begin until the actual date of imprisonment under the sentence and that the execution of a deed before confinement and while execution of the judgment of conviction was stayed by an appeal, was valid. The court stated: "If we should hold that civil rights are suspended the moment sentence is pronounced, the defendant's punishment would be increased by taking away his civil rights for an indefinite period in excess of the term of imprisonment, which does not begin until the stay allowed upon appeal has expired and he is imprisoned, or possibly when he is in custody to be conveyed to the penitentiary."

In *Cole v. American Railway Express Co.*, 228 Mo.App. 78, 68 S.W.2d 736 (1934), the court, reading the civil death statute in conjunction with the statutes affording convicts access to the courts through a trustee (Section 460.010), ruled that the civil death statute did not preclude a person convicted, but paroled by the Governor, from filing suit in his own name. The disability created by Section 222.010 was in effect only during actual imprisonment.

The fact that the testator in this lawsuit was not on parole or probation is unimpor-

tant, the central point being that he was at liberty and not imprisoned. We rule that Mr. Lance although convicted of a crime and judgment entered thereon, while at liberty, had the legal ability to execute his will and the will was not void by reason of Section 222.010.[1]

■ Next plaintiffs, argue that the court erred in denying their motion for directed verdict because defendants failed to prove testamentary capacity and the attestation of the will. First, with respect to the question of the evidence of Lance's capacity we note that within six months of executing his will Lance was involved in a divorce culminating in the written settlement of all his property and a criminal trial on the charge of arson. These events resulted in testimony regarding his capacity from three attorneys: E. E. Richards, Jr., who assisted in the criminal trial and drafted his will; Raymond O. Sears, his trial counsel in criminal trial and attorney in the divorce proceedings; and Alden Lance, his wife's attorney in the divorce. These witnesses, along with the subscribing witness to the will, the cashier from Lance's bank and six other friends, businessmen and merchants who dealt with Lance all offered factual testimony that he was of sound and disposing mind and memory as required in *Strahl v. Turner,* 310 S.W.2d 833, 838 (Mo.1958) and as defined in MAI 15.01. There was sufficient evidence to submit the issue to the jury for their decision.

■ The argument that defendants failed to prove proper attestation of the will appears to be directed to one point; Mrs. Markt testified she had no conversation with Lance and at no time did he ask her to witness his signing of the will, therefore, she had no intent to witness the will. Section 474.320, requiring two or more competent witnesses to subscribe their names to the will in the testator's presence means the

witness must have the intent to sign as a witness. The defendants cite *Baxter v. Bank of Belle,* 340 Mo. 952, 104 S.W.2d 265 (1937) to support this principle in their argument but the case is readily distinguishable from the facts here. Lance's will was witnessed by Mr. Richards, his secretary, Mrs. Mary Lou Markt and Miss Dawson who was ill and in a nursing home at the time of the trial. After reading the dispositive clauses to Lance, attorney Richards introduced Mrs. Markt and Miss Dawson and asked testator: "Now is this your will and do you request that . . . myself, Mrs. Markt and Miss Dawson attest it as witnesses?" or words to that effect. Attorney Richards testified that Lance requested the witnesses to sign and they did so in his presence. It provides as evidence that Mrs. Markt had the prerequisite intent to sign as a witness. A testator's request that the witness attest does not need to be made by express words but may arise from acts, signs and conduct. *Strahl v. Turner, supra.* The element of intent was established by this testimony and a submissible issue made for the jury.

■ The plaintiff's final assignment of error is the trial court's failure to give their offered Instruction No. 9 authorizing a finding of undue influence from circumstantial evidence. This was not an instruction found in MAI and we note, preliminarily that the court did give MAI 32.18 directing a verdict for plaintiffs on undue influence and MAI 15.03 defining undue influence. We do not rule this point on its merits because at no time has the point been properly presented or preserved. The desire to decide points on their merits is overshadowed by compelling reasons of public policy.

A party must make specific objections to instructions before submission to the jury

---

1. Although, the constitutionality of the statute is not raised here and this court is not bound by the decision (*Valentine v. State,* 541 S.W.2d 558, Mo. en banc, 1976), we note with interest the recent case of *Thompson et al. v. Bond et al.,* D.C., 421 F.Supp. 878, which declared Section 222.010, insofar as it purports to suspend

the civil rights of adults sentenced to imprisonment, as unconstitutional because violative of the First and Fourteenth Amendments of the United States Constitution. The case dealt with the rights of convicts to file lawsuits which arise from activities unrelated to their incarceration.

or in a motion for new trial if the matter is to be preserved for appellate consideration. Rule 78.07; *Chambers v. Kansas City*, 446 S.W.2d 833, 840 (Mo.1969) and *Bremer v. Mohr*, 478 S.W.2d 14, 18–19 (Mo.App.1972). It is necessary that the court be specifically advised as to the objection. *O'Brien v. City of St. Louis*, 355 S.W.2d 904 (Mo.1962). This is so the matter may be properly briefed and allow the trial court an opportunity to correct the error avoiding the delay, expense and hardship of an appeal. *Schneider v. Southwestern Bell Telephone Company*, 413 S.W.2d 16 (Mo.App.1967).

A search of the transcript reveals that during the instruction conference before submission, the plaintiff simply objected to the court's refusal to give the instructions, stating no reason. The plaintiff's motion for new trial charged the court erred in refusing the instruction because it followed Missouri law and permitted the jury to find undue influence by circumstantial evidence. The trial court should have been advised why the instruction should have been given. To state that it followed the law or that it permitted the jury to find undue influence by circumstantial evidence is hardly specific. The specificity requirement of Rule 78.-07 is similar to the "wherein and why" requirement of Rule 84.04(d). The trial court should have been told why Instruction No. 9 should have been given and not having been so advised we rule that the point was not preserved for our attention.

Finding no error in the judgment of the trial court, we affirm.

All concur.