Harmon v. Bowers.

---

### JOHN R. HARMON V. FREDERICK BOWERS.

No. 15,553.   ( 96 Pac. 51.)

#### SYLLABUS BY THE COURT.

1. CIVIL RIGHTS—*Suspension*—*Imprisonment.*   The suspension of the civil rights of a person sentenced to the penitentiary for a term less than life begins at the date of his imprisonment under the sentence.

2. DEEDS—*Executed Pending a Stay of Execution of a Sentence of Imprisonment.*   A sentence to the penitentiary for a term of years does not make void a conveyance duly executed by the convict before he is imprisoned under the sentence and while execution of the judgment of conviction is stayed by proceedings upon appeal to the supreme court.

3. ——— *Delivery*—*Escrow.*   The manual deposit of a deed with a third party, to receive and hold for the grantee, with intent thereby to give it effect as a conveyance and to place it beyond the custody and control of the grantors, with a declared or manifest purpose of making a present transfer of title, is a sufficient delivery.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed May 9, 1908. Affirmed.

*A. M. Jackson, A. L. Noble,* and *L. C. Brown,* for plaintiff in error.

*C. T. Atkinson, C. R. Pollard, G. H. Buckman,* and *S. C. Bloss,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: On March 5, 1904, John R. Harmon was the owner of a tract of land in Cowley county, Kansas, upon which he and his wife resided as a homestead. On the same day he was convicted of a crime in the district court of that county, and on April 12, 1904, he was sentenced to the penitentiary. He appealed to the supreme court, where the judgment was affirmed December 1, 1904. From the time of his sentence, April 12, 1904, until January 19, 1905, John R. Harmon was at liberty under bond, but on January 19, 1905, he was taken to the penitentiary, where he remained until January 12, 1906, when he was pardoned and discharged.

After his conviction and sentence in the district court, but before he was taken to the penitentiary, Harmon and his wife, Lucinda W. Harmon, made a deed of the homestead to John R. Simpson and Ella Simpson, which was placed in the hands of R. A. Gilmer, to be delivered to Simpson for the benefit of Mrs. Harmon. On March 5, 1905, Fred Bowers negotiated with Mrs. Harmon for the purchase of the land, upon which she still resided, and the deed was thereupon executed to him by John R. Simpson and wife. The consideration for this deed was $500 cash, the payment of taxes, and the release of prior debts of Harmon and wife to Bowers, which were liens upon the land. Some time in the summer of 1905 Mrs. Harmon died, leaving in the possession of John R. Simpson $297, part of the money received by her from Fred Bowers, to be delivered to Mr. Harmon when he should be released from the penitentiary, which was done.

This action was brought by Harmon against Bowers

to recover the land, and for rents and profits. The judgment was for the defendant, and the plaintiff asks for a reversal. The plaintiff claims (1) that on account of his disability as a convict he was unable to make a legal transfer of his realty during the time he was under sentence but at liberty under bond, and (2) that the deed which he made to John R. Simpson, in which his wife joined, had never been legally delivered.

Section 2301 of the General Statutes of 1901 reads as follows:

"A sentence of confinement and hard labor for a term less than life suspends all civil rights of the person so sentenced during the term thereof."

It is necessary to determine when the term of imprisonment referred to in this statute begins. The defendant having appealed to this court from the judgment of conviction and sentence, and having given bond as provided by law, execution of the judgment was stayed, as provided in chapter 389 of the Laws of 1903. Another statute provides for the appointment of a trustee to take charge of and manage the estate of a person imprisoned in the penitentiary for a term less than life, but such appointment can not be made until satisfactory evidence is given that the convict is actually imprisoned. (Crim. Code, §§ 337, 338.) From these provisions it appears that civil rights are not suspended until the convict is imprisoned. If we should hold that civil rights are suspended the moment sentence is pronounced the defendant's punishment would be increased by taking away his civil rights for an indefinite period in excess of the term of imprisonment, which does not begin until the stay allowed upon appeal has expired and he is imprisoned, or, possibly, when he is in custody to be conveyed to the penitentiary.

"If, after sentence has been pronounced, no appeal is taken, the conviction is complete, and its consequences attach and operate at once. But if an appeal be prosecuted, the effect of the appeal is to suspend and hold in

abeyance the enforcement and legal consequences of the conviction until the judgment of the court of last resort has affirmed the conviction had in the trial court." (*Arcia v. The State,* 26 Tex. App. 193, 205, 9 S. W. 685.)

The period of confinement and hard labor referred to in section 2301 of the General Statutes of 1901, above quoted, is the same as the actual imprisonment referred to in sections 337 and 338 of the criminal code, and is the period intervening between the date of actual imprisonment under the sentence and the discharge therefrom. (*Williams v. Shackleford,* 97 Mo. 322, 11 S. W. 222; *The State v. Grottkau,* 73 Wis. 589, 41 N. W. 80, 1063, 9 Am. St. Rep. 816; *Ex Parte Jones and Ellwood,* 41 Cal. 209; *In re Morse,* 117 Fed. 763.)

It is next insisted that the deed to Simpson is void as a conveyance for the reason that it was not delivered. The trial was before the court, and no special findings were made, but the general finding for the defendant determined every material fact in issue necessary to uphold the judgment against Harmon. It appears from the abstract that Harmon and wife, in anticipation of the imprisonment of the husband, desired to make some disposition of the homestead for the benefit of the wife, and accordingly, with the consent of the Simpsons but without any consideration moving from them, executed and acknowledged the deed to them and left it with the notary, Mr. Gilmer, for the grantees. Mr. Simpson testified that Harmon told him of his intention to make the deed for the benefit of Mrs. Harmon, and afterward informed him that he had done so, and requested him to go to Gilmer and get the deed. Mr. Gilmer testified that the deed was delivered to him with instructions from Harmon to deliver it to Simpson for the benefit of Mrs. Harmon. Mrs. Harmon, while negotiating for the sale of the property to Bowers, sent to Simpson for the deed, but the messenger did not find it there, and by Simpson's direction went to Gilmer for it, and Gilmer, at

Simpson's request and upon the assurance that it would be used for the benefit of Mrs. Harmon, handed it to the messenger, who took it to the real-estate agent who was preparing the deed to be executed by the Simpsons, and it was handed with that deed to Bowers, the purchaser of the land.   This court has said:

"An actual or formal delivery of a deed never was necessary.   A deed may be good by constructive delivery as well as by actual delivery.   Any words or acts showing an intention on the part of the grantor that the deed shall be considered as completely executed, and the title conveyed, is sufficient." (*Tucker v. Allen,* 16 Kan. 312, 319.)

The manual deposit of a deed with a third party, to receive and hold for the grantee, with intent thereby to give it effect as a conveyance and to place it beyond the custody and control of the grantors, with a declared or manifest purpose of making a present transfer of title, is a sufficient delivery. (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490; *Kittoe v. Willey,* 121 Wis. 548, 99 N. W. 337; *Brown v. Westerfield,* 47 Neb. 399, 66 N. W. 439, 53 Am. St. Rep. 532; 1 Devlin, Deeds, 2d ed., § 269.)

It is argued that the deed while in Gilmer's hands was subject to the dominion and control of Mrs. Harmon and therefore subject to recall.   Upon this matter there was not only the inference to the contrary that might be drawn by the trial court from the testimony above stated, but there was the additional testimony of Mr. Gilmer that if Simpson had called for the deed he would have delivered it to him, even without Mrs. Harmon's consent, and when he did give it up, as we have already noted, it was upon Simpson's direction.

The arrangement by which Harmon and wife voluntarily conveyed their homestead to the Simpsons, to be used by the latter for the benefit of Mrs. Harmon, appears to have been a beneficent provision for her, in view of the condition of the property and of his pending imprisonment, and it was carried out in good faith by

the persons in whom they confided. The plaintiff's wife was thereby supported, wholly or partially, his debts were paid, and the remainder of the consideration, left in Mr. Simpson's hands when she died, was, according to her request, duly paid over to him. Retaining this material part of the consideration, he invoked the aid of the court in an effort to recover the land for which this consideration had been paid. No sufficient reason, legal or equitable, being shown for undoing this transaction at his instance, the decision was adverse to his claims. We find no reason to disturb this judgment, and it is affirmed.