STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, Attorney General, *et al., Petitioners,* v. THE HONORABLE MAURICE P. O'KEEFE, JR., District Judge, First Judicial District, *Respondent.*

No. 56,771

IN RE APPLICATION OF MICHAEL A. BARBARA, SECRETARY OF CORRECTIONS, FOR AN ORDER STAYING CERTAIN COURT PROCEEDINGS IN LEAVENWORTH DISTRICT COURT.

(686 P.2d 171)

Opinion filed July 13, 1984.

*Brenda Hoyt,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for petitioners.

*Maurice P. O'Keefe, Jr.,* of Leavenworth, argued the cause and was on the brief pro se.

*Lisa Nathanson,* of Topeka, was on the *amicus curiae* brief for Legal Services for Prisoners, Inc.

*Michael Kaye,* of Overland Park, was on the *amici curiae* brief for Kansas Civil Liberties Union; *Elizabeth R. Alexander,* of Washington, D.C., was on the *amici curiae* brief for the National Prison Project of the American Civil Liberties Union.

The opinion of the court was delivered by

LOCKETT, J.: This is an original action in mandamus, brought by Attorney General Robert T. Stephan, Secretary of Corrections Michael Barbara, and other Department of Corrections officials (petitioners). The action was brought against Judge Maurice P. O'Keefe, Jr., and various inmates at the Kansas State Penitentiary. All respondents except Judge O'Keefe have now been dismissed from this action. The petitioners request the Supreme Court issue an order prohibiting Judge O'Keefe from appointing inmates at the Kansas State Penitentiary (KSP) to represent other inmates at KSP in district court proceedings. An order was issued by the Supreme Court on April 5, 1984, staying proceedings in the district court until further order of the Supreme Court.

Judge Maurice P. O'Keefe, Jr. is a district judge in the First Judicial District of Kansas, the district in which KSP is located. Judge O'Keefe has appointed KSP inmates Arthur Murley, Jerry Wayne Smith, and Michael Pyle, none of whom are licensed to practice law in Kansas, to appear on behalf of other KSP inmates as legal counsel in his court. The inmates as plaintiffs requested

Murley, Smith, and Pyle be appointed as legal counsel to represent them in civil actions filed by the inmates/plaintiffs in the district court against prison officials. Four civil cases involving inmate representation are still pending in the district court.

Petitioners first assert an action in mandamus is the proper method to challenge the district court's act of appointing Murley, Smith, and Pyle to act as attorneys.

Mandamus is a command issuing from a court of law of competent jurisdiction, in the name of the state, directed to some inferior court, tribunal, board, or to some corporation or person either compelling or enjoining the performance of a particular act. The act which the writ directs must result from the official station of the party or from operation of law. Mandamus is a remedy at law to which the rules of civil procedure relating to actions at law are applicable. K.S.A. 60-802.

Mandamus is an extraordinary remedy which is available only in cases in which the usual form of procedure is powerless to afford relief. It is not a common means of obtaining redress, but is available only in rare cases, and as a last resort, for causes which are really extraordinary. The writ of mandamus seeks to enjoin an individual or to enforce the personal obligation of the individual to whom it is addressed. It rests upon the averred and assumed fact that the respondent is not performing or has neglected or refused to perform an act or duty, the performance of which the petitioner is owed as a clear right. The writ does not reach the office nor can it be directed to the office. It acts directly on the person of the officer or other respondent, compelling him to perform a plain duty, or enjoining him from performing a wrongful act. It is, therefore, in substance, a personal action against the respondent and not one *in rem* against the office. The writ will not ordinarily issue unless there has been a wrongful performance or actual default of duty.

The Supreme Court of Kansas has been granted original jurisdiction in proceedings in mandamus by the Kansas Constitution, art. 3, § 3. This jurisdiction is plenary and may be exercised to control the actions of inferior courts over which the Supreme Court has superintendent authority. In addition to constitutional authority, the Kansas Supreme Court is guided by the Kansas statutes. K.S.A. 60-801 provides:

"Mandamus is a proceeding to compel some inferior court, tribunal, board or

some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

Owing to the summary and drastic character of the writ of mandamus, this court has properly erected many safeguards. The writ of mandamus is discretionary with the court and will not issue as a matter of right. Unless a respondent's legal duty is clear, the writ should not issue. *Huser v. Duck Creek Watershed Dist. No. 59*, 234 Kan. 1, 668 P.2d 172 (1983).

The only acts of public functionaries which the court ever attempts to control by either injunction or mandamus are such acts which are by their nature strictly ministerial. A ministerial act is one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed. *Arney v. Director, Kansas State Penitentiary*, 234 Kan. 257, 671 P.2d 559 (1983).

A trial court's discretion cannot be controlled by mandamus. Where an order of the trial court denies a litigant a right or privilege which exists as a matter of law, and there is no remedy by appeal, mandamus may be invoked. *Wesley Medical Center v. Clark*, 234 Kan. 13, 669 P.2d 209 (1983).

The Supreme Court has general administrative authority over all courts in this state. Kan. Const. art. 3, § 1. The issue raised in this action directly affects the operation of Kansas courts and is of statewide importance. Where a petition for mandamus presents an issue of statewide importance and concern, the court may exercise its original jurisdiction in mandamus to settle the issues raised. *Wesley Medical Center v. Clark*, 234 Kan. 13. This is a proper issue for the court to accept.

When does an individual have a right to be represented by an attorney? An individual whose life or liberty is threatened by a criminal charge, felony, or misdemeanor has a constitutional right to be represented by an attorney. If the individual is indigent, the prosecuting sovereign, *i.e.*, city, state or federal government, must insure that an attorney is appointed to represent the individual whose life or liberty is jeopardized. When an individual's property or claim is at stake in a civil action, that individual is also entitled to have an attorney represent his

cause—but only if he can afford to hire one or there is a special law or statute that provides for the appointment of an attorney to represent an indigent claimant or defendant.

In 1963, the United States Supreme Court required the appointment of an attorney for an indigent criminal defendant charged with a felony. *Gideon v. Wainwright*, 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963), 93 A.L.R.2d 733. That court tied the requirement for appointment of counsel for the indigent criminal defendant to the due process clause of the Fourteenth Amendment. The general right to counsel in a criminal case has not affected civil actions where a party is unable to afford an attorney. The Sixth Amendment to the Constitution of the United States, providing for the assistance of counsel to the accused "in all criminal prosecutions," is limited to criminal prosecutions as stated in the amendment, and as a result has had no bearing on the question of whether there is a right to counsel in a civil action or administrative proceeding.

Kansas allows an individual to proceed in forma pauperis in a civil action or appeal if the individual meets the indigent standard required for the waiver of the cost to file an action. The expansion of the right to an attorney for individuals as defendants in a criminal action has not been extended by this state to civil actions.

The indigent litigant is not completely without assistance of counsel. In some areas of this state the needs of the poor for counsel in civil actions have been somewhat alleviated by the private bar, organized private legal aid and public legal assistance.

There ar no Kansas cases that require an indigent prisoner be afforded the right to court-appointed counsel in a civil case where the same has been denied as a constitutional right to an indigent freeman who is a party to a civil action. The indigent prisoner is treated the same as any individual of society not imprisoned who is unable to afford the services of an attorney to prosecute or defend his cause. We are, therefore, unable to say that prisoners are significantly more disabled with respect to legal representation than are other potential indigent civil litigants.

At common law a prisoner was deemed civilly dead and therefore lacked the legal capacity to sue or be sued. In Kansas,

prior to 1970, prisoners serving sentences for a term of years or life lost all civil rights except the right and power to make contracts concerning their property. K.S.A. 21-134 (Corrick). A person serving a life term was declared civilly dead. K.S.A. 21-118 (Corrick). Confinement in a penitentiary for either a term of years or life suspended a convict's right to sue. *Hammett v. San Ore Construction Co.,* 195 Kan. 122, 402 P.2d 820 (1965). Now under our statutes, a person convicted in any state or federal court of a crime punishable by death or imprisonment for a term of one year or longer, and imprisoned, is ineligible to hold any public office in Kansas, or to register as a voter or to vote in any election under the laws of Kansas, or to serve as a juror. K.S.A. 21-4615. The disability imposed under the former statute has now been removed, allowing a prisoner to sue or be sued in a civil action in the courts of this state.

The constitutional guarantee of providing for open courts and insuring a civil remedy for injuries to persons and property is a statement of our philosophy and a general rule which can be used to solve civil conflicts. This right is generally regarded as one of the most sacred and essential constitutional guarantees. However, the guarantee creates no new rights but merely is declaratory of our fundamental principles. In light of this guarantee, it is the policy and the obligation of the state to furnish and of the courts to give every litigant his day in court and a full and ample opportunity to be heard. This right extends to everyone who may be materially affected by the action of the court in a legal proceeding. The guarantee secures and places every citizen within the protection of the law of the land. It insures the right of every person protected by it to seek remedy by court action for any injuries done to him or his personal property. The guarantee entitles the citizen to have justice administered according to the law without denial or delay. A litigant is assured the right to prosecute or defend an action, provided he prosecutes or defends the action as contemplated by law. Since a prisoner can sue or be sued in this state he must be afforded the right to his day in court.

The right to a day in court means the right to be afforded an opportunity to be heard. The right to be heard does not insure an indigent or indigent prisoner litigant the right to an attorney to prosecute or defend his civil cause. A litigant's right of access to

the courts applies also to proceedings before commissions, boards, and bureaus.

28 U.S.C. § 1915 (1982) authorizes federal courts to allow both civil and criminal appellants to proceed in forma pauperis if they are indigent. The statute also allows the federal judge to request an attorney to represent any indigent person who is a party in a civil action. Federal district courts have no duty to appoint counsel to represent indigent plaintiffs, imprisoned or not, in civil actions, but such courts are endowed with discretion whether to do so. *Willett v. Wells,* 469 F. Supp. 748 (E.D. Tenn. 1977). State prisoners were found not significantly more disabled with respect to legal representation in the prosecution of civil rights complaints than were other potential civil rights litigants. *Miller v. Smith,* 431 F. Supp. 821 (N.D. Tex. 1977).

Kansas law prevents denial of access by the placing of undue restrictions upon prisoners' reasonable access to the courts. Under the Sixth and Fourteenth Amendments, a person brought to trial in the state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. In civil actions, where the indigent litigant who is not in jail may be afforded assistance of the private bar, organized private legal aid, or public legal assistance, the indigent prisoner has access to Legal Services for Prisoners, Inc.

Legal Services for Prisoners, Inc. (Legal Services, Inc.) is a private, nonprofit state-funded corporation which has been in existence since 1972. The program provides legal assistance to all indigent inmates in the Kansas prison system. It employs four full-time attorneys and one part-time litigation attorney who are assisted by law students from both Kansas law schools.

Specifically, the program operates for the purpose of accomplishing the following:

1. To assist indigent inmates with the wide variety of unique legal problems which arise out of and during their incarceration; to identify and assist those prison inmates with real prison problems; and to augment the normal institutional counseling services, thereby rendering the institutions less subject to disturbance.

2. To discourage frivolous and unsubstantial litigation.

3. To resolve, when possible, at the lowest administrative level

prison complaints and grievances which would otherwise burden correctional staff and the courts.

Legal Services, Inc. provides a variety of services for prisoners. Throughout its history, it has concentrated on providing comprehensive services to the maximum number of inmates possible. The program is accessible to all indigent inmates in the custody of the Kansas Secretary of Corrections, a large number of whom seek and receive such assistance.

Legal Services, Inc. provides assistance and services to inmates in any type of legal matter, except a lawsuit for money damages from which a private attorney could derive a fee. The same restriction is usually incorporated when public legal assistance programs are available to indigent civil litigants in the various areas of the state. The reason for the restriction is to insure that public money will not be spent where there exists a method through private enterprise to prosecute the civil claim.

A prisoner who does not receive assistance through Legal Services, Inc. may employ a private attorney to litigate his cause of action. The creation of the attorney-client relationship, however, is essentially contractual. The employment of an attorney must be agreed to by both the potential client and the attorney. Lawyers are entitled to compensation for services rendered to their clients. Contingent fee contracts between a client and an attorney are recognized as valid. Individuals who have claims that may lack merit usually have difficulty in retaining an attorney to represent them under a contingent fee contract. An indigent whose claim may lack merit will find it difficult to contract for the services of an attorney under a contingent fee agreement and therefore must champion his own cause or defense.

Since the prisoners have a right to their day in court, they must be afforded the right to be heard either pro se or through counsel in a civil action. The right to be heard does not guarantee an indigent prisoner the right to counsel in a civil action. It does prevent the denial or undue restriction of prisoners' reasonable access to the courts. It would be an abuse of discretion for prison regulations to interfere with an inmate's opportunity to procure with reasonable promptness, or to communicate in a reasonable manner with, an attorney to represent him in civil actions.

There is no evidence before the court in this action that the petitioners have denied prisoners the opportunity to retain

counsel to represent them in civil matters, or interfered with the prisoners' access to the courts. Here, if a prisoner is financially unable to retain an attorney to represent him, he has the opportunity to enter into an attorney-client relationship with an attorney under a contingent fee contract or request the assistance of an attorney provided by Legal Services, Inc.

Judge O'Keefe believed the federal courts allow inmates to give legal assistance to their fellow inmates in the federal district courts of Kansas, including representing them in civil cases that concern prison matters, but that there are no viable alternatives for the inmates to retain or have counsel provided in state courts. The federal cases indicate where there is sufficient assistance, either from the bar association or from legal services, the inmate is not entitled to have the services of a fellow inmate as legal counsel. However, Judge O'Keefe believed when that legal assistance is ineffective, or nonexistent, the inmates are entitled to have other inmates represent them in court if they so desire.

The question posed is, where a Kansas district judge determines that inmates of a prison do not have effective and meaningful access to the courts in civil matters, may he then appoint other inmates to appear in the district court, to act as an attorney, prosecuting or defending the prisoner's claim?

Judge O'Keefe states the leading federal case on representation is *Johnson v. Avery*, 393 U.S. 483, 21 L.Ed.2d 718, 89 S.Ct. 747 (1969). Johnson, a state prisoner, repeatedly assisted other prisoners to prepare petitions for post-conviction relief. Johnson was placed in disciplinary confinement and deprived of certain privileges for violations of a prison regulation prohibiting inmates from helping other inmates to prepare writs and other legal papers. The United States Supreme Court determined that unless and until the state provided some reasonable alternative to assist prisoners, the state could not validly enforce the regulation. The Supreme Court determined that a state prison regulation barring inmates from assisting other prisoners in preparation of petitions for post-conviction relief was invalid as in conflict with the federal right of habeas corpus, despite the state's claim that regulation was necessary to maintain prison discipline, where the state did not provide an available alternative to assistance provided by other inmates. Another case cited by Judge O'Keefe is *Vaughn v. Trotter*, 516 F. Supp. 886 (M.D.

Tenn. 1980), in which the court, citing *Wolff v. McDonnell*, 418 U.S. 539, 592, 41 L.Ed.2d 935, 94 S.Ct. 2963 (1974), stated as follows:

" '[T]he Supreme Court held unconstitutional a rule prohibiting inmates *giving to* or receiving from other inmates legal assistance on civil matters unless the prison or its officials provide a "reasonable alternative." ' "

The *Trotter* court further stated on page 893 as follows:

"In guaranteeing the right of mutual inmate assistance in order to assure access to the courts, the Supreme Court has created a derivative right, vested in jailhouse lawyers, to provide legal assistance to others. The clear right to receive assistance necessarily creates the concomitant right to provide it. It has been held to be fundamental that 'absent reasonable alternatives, and subject only to reasonable restrictions, inmates must be *allowed to assist other prisoners in the preparation of legal petitions.*' " Emphasis supplied.

In *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied* 450 U.S. 1041 (1981), and *Bounds v. Smith*, 430 U.S. 817, 52 L.Ed.2d 72, 97 S.Ct. 1491 (1977), the courts stated that an inmate has a fundamental constitutional right of access to the courts and that prison authorities are required to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

In *Buise v. Hudkins*, 584 F.2d 223 (7th Cir. 1978), the court stated at page 231 as follows:

"[C]ertain types of inmate lawyering [may be restricted] under certain circumstances. Thus writ writing for a profit has been prohibited [cite omitted], and an inmate has no right to be a writ writer during times when he is assigned to perform other work."

"The mere fact that a jailhouse lawyer is not schooled in law cannot in itself justify prohibiting his consulting with other inmates on legal matters." n. 9.

The *Buise* court stated it is well established that the state bears the burden of demonstrating the adequacy of such an alternate means of access such as legal services or an adequate library. The law is best set forth in *Wetmore v. Fields*, 458 F. Supp. 1131 (W.D. Wisc. 1978), where the court stated as follows:

"Where a prison provides inmates with adequate assistance from persons trained in the law, the right to inmate legal assistance, which is premised upon absence of reasonable alternatives for legal aid, is not applicable. In such a situation, a prison can restrict inmates from giving legal assistance to other prisoners, and the prison is not required to provide an adequate law library." pp. 1142-43.

"Where a prison does not provide adequate assistance from persons trained in the law, the right to inmate legal assistance applies. In that situation, the prison cannot prohibit inmates from rendering legal assistance to other ignorant, unskilled, untutored or illiterate inmates, and the prison must provide an adequate law library for those capable of using it." p. 1143.

A careful reading of *Vaughn v. Trotter*, 516 F. Supp. 886, *Wolff v. McDonnell*, 418 U.S. 539, *Ramos v. Lamm*, 639 F.2d 559, *Bounds v. Smith*, 430 U.S. 817, *Buise v. Hudkins*, 584 F.2d 223, and *Wetmore v. Fields*, 458 F. Supp. 1131, reveals that all of these cases addressed the issue of whether an inmate may assist another inmate in drafting pleadings and memoranda or in using a law library. None of these cases even infer that an inmate may appear in court on behalf of another inmate. The United States District Court for the District of Kansas recently considered the issue of inmate assistance to other inmates in *Smith v. Halford*, 570 F. Supp. 1187 (D. Kan. 1983). The court acknowledged that inmates may assist other inmates as writ writers, but again, did not imply in any manner that inmate assistance could extend into the courtroom.

Contrary to the position of the Honorable Judge/Respondent, petitioners believe that *Fair v. Givan*, 509 F. Supp. 1086 (N.D. Ind. 1981), is applicable to the case at bar. Fair, a state prisoner, brought an action seeking injunctive and declaratory relief in order that he might use legal assistance of another inmate in various legal matters in state courts. The court ruled:

"Fair states that the Porter Superior Court had granted him the assistance of Owen in his cause of action. However, it is well established that a criminal defendant has no constitutional right to have an unlicensed attorney or layman represent him. In particular, the Sixth Amendment does not create a right to be represented by a non-attorney lay person. *United States v. Taylor*, 569 F.2d 448 (7th Cir. 1978), *cert. den.*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978); *U.S. v. Peterson*, 550 F.2d 379 (7th Cir. 1977). See also, *United States v. Benson*, 592 F.2d.257 (5th Cir. 1979); *United States v. Anderson*, 577 F.2d 258 (5th Cir. 1978); *United States v. Bertolini*, 576 F.2d 1133 (5th Cir. 1978); *Weber v. Garza*, 570 F.2d 511 (5th Cir. 1978); *State of Nebraska v. Stoner*, 201 Neb. 664, 271 N.W. 348 (1978).

"*Turner v. American Bar Assoc.*, 407 F. Supp. 451 (N.D. Tex., W.D. Pa., N.D. Ind., D. Minn., J.D. Ala., W.D. Wis. 1975), *aff'd sub nom; Taylor v. Montgomery*, 539 F.2d 715 (7th Cir. 1976) and *Pilla v. American Bar Assoc.*, 542 F.2d 56 (8th Cir. 1976), held that there was insubstantial historical support for the plaintiffs' contention that they had a right to have an unlicensed layman assist them under the Sixth Amendment. 407 F. Supp. at pages 476-477. To hold otherwise would amount to court sanction of the unauthorized practice of law." 509 F. Supp. at 1090.

The United States Supreme Court decisions guaranteeing prisoners the right to seek assistance and advice on legal matters from other inmates in certain matters do not sanction representation during litigation by fellow prisoners who are lay persons and are not parties. In all courts of the United States, the parties may plead and conduct their own cases personally or by counsel. 28 U.S.C. § 1654 (1982).

The federal courts have consistently rejected attempts at third-party lay representation. By law an individual may appear in federal courts only pro se or through legal counsel. Our policy is the same.

One of the many good reasons for distinguishing assistance and advice from representation is that a party may be bound, or his rights waived, by his legal representative. When that representative is a licensed attorney there are grounds for belief that the representative's character, knowledge and training are equal to the responsibility. In addition, remedies and sanctions are available against a lawyer that are not available against the fellow inmate, including misconduct sanctions and malpractice actions. Conversely, if a party inmate commits a costly procedural or other error, the fault is his own and may not be shifted to his in-house advisor, because the right to assistance protected by case law is meant to further access to the courts, not to shield an inmate against responsibility for errors once access has been obtained. *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41 (1st Cir. 1982).

In Kansas a state prisoner is allowed to assist other prisoners' preparation of legal matters. The Department of Corrections has adopted a regulation which allows an inmate to give, but not to charge for, assistance in legal matters to another inmate when such assistance is requested by another inmate. K.A.R. 1983 Supp. 44-12-702. Such authority does not confer upon the prisoner allowed to assist others in legal matters the status of an attorney. The power of the regulation goes no further than the prison walls, it is not binding on the courts of this state. It is for the courts to determine who may appear to assist a litigant in an action.

Petitioners argue the appointment of inmates to represent other inmates in district court proceedings permits unauthorized persons to practice law before the courts.

Petitioners claim K.S.A. 7-126 codifies the Supreme Court Rules relating to the admission of attorneys. These rules establish educational, moral character and examination requirements for applicants, the standards for issuance of temporary permits to practice and the standards for legal interns.

K.S.A. 7-104 provides the procedure and circumstances under which an attorney licensed in another state may appear in the courts of this state. The statute also provides that "nothing in this section shall be construed to prohibit any party from appearing before any of said courts, tribunals or agencies, *in his or her own proper person and on his or her own behalf.*" (Emphasis supplied.)

Petitioners submit that these statutes and rules clearly identify all instances in which a person may appear in a legal capacity in Kansas courts, *i.e.*, as an attorney regularly admitted to the Kansas bar, as an attorney with a temporary permit, as a legal intern under the supervision of a licensed attorney, on motion as an attorney admitted to practice in another state, and as a nonlicensed person acting on his or her own behalf. There is nothing in the statutes or the court rules which even infers that there might be other circumstances in which a nonlicensed person may act in a legal capacity in a Kansas court.

Disciplinary Rule 3-101 (A), 232 Kan. clxxxiii, of the Code of Professional Responsibility, provides:

"A lawyer shall not aid a non-lawyer in the unauthorized practice of law."

This court in *State, ex rel., v. Hill,* 223 Kan. 425, 426, 573 P.2d 1078 (1978), adopted the test for determining what is the unauthorized practice of law thusly:

" 'The main general test in unlawful practice of law cases seems to be whether or not an attorney-client relationship exists. That is, whether the person whose conduct is under scrutiny represented or implied he had legal knowledge beyond that of a layman and provided "professional" assistance to a "client." The customer pays for the "skill," "special knowledge" or "expertise" of the seller. There is a personalization of services provided. That is, the customer provides the data or raw material and the "expert" assembles, compiles, organizes, etc. and using the "expertise" (real or imagined) provides a legal service.' "

Although it is open to question whether the inmates appointed to act as legal counsel are being paid or receiving a benefit for their services, there can be no question whether these inmates

are claiming an expertise beyond that of a layman or that they are personalizing their services for their inmate "clients." Thus, there can be no question the appointed inmates are engaged in the unauthorized practice of law. They obviously are.

In *Bounds v. Smith,* 430 U.S. 817, the United States Supreme Court required states to assist inmates in the preparation and filing of meaningful legal papers by providing adequate law libraries or adequate assistance from persons trained in the law. The court acknowledged that inmates may assist each other in preparing such papers, and the Department of Corrections has adopted a regulation that allows such assistance.

To give inmates a right to be represented by individuals not licensed to practice law merely because they are prisoners violates any concept of fundamental fairness. Other persons, not incarcerated, who lack sufficient funds to hire an attorney are not permitted to have a nonlawyer represent them in a court of law. If the court were to decide that because many inmates are indigent, they may be represented by nonlawyers in court, such a decision would open the door to demands from nonincarcerated indigent or poor persons for the same privilege under the constitutional right of equal protection.

Here Judge O'Keefe determined that litigant prisoners were not afforded meaningful access to the courts or proper assistance to protect their rights in civil actions. To remedy the situation, he authorized nonlawyer prisoners to act as counsel, if requested, for their fellow prisoners. He, as a district judge, in effect conferred upon certain individuals the status of counsel to appear in court on a specific type of case.

"Counsel," as referred to in the Sixth Amendment to the Constitution of the United States, does not include a lay person; rather "counsel" refers to a person authorized to practice law. *United States v. Grismore,* 546 F.2d 844 (10th Cir. 1976). The words "counsel" and "attorney" have fixed and universal significance referring to a class of persons who are by license constituted officers of the court. As licensed officers of the court they are empowered to appear in court to prosecute or defend claims of their clients. This license allowing persons to act professionally for others places special duties, responsibilities, and liabilities upon the attorney.

The practice of law is intimately entwined with the exercise of

judicial power in the administration of justice. The right to define and regulate the practice of law naturally and logically belongs to the judicial department of government. Under Article 3, Section 1 of the Constitution of Kansas only the Supreme Court has the inherent power to prescribe conditions for admission to the bar, and to define, supervise, regulate and control the practice of law. *Martin v. Davis,* 187 Kan. 473, 357 P.2d 782 (1960).

This court has constitutional, statutory and inherent jurisdiction to inquire by what authority a district judge allows one not approved by the Kansas Supreme Court to practice law in this state and to make appropriate orders relating thereto. A proceeding in the nature of mandamus is appropriate for that purpose.

In the interpretation of the laws and administration of justice it is essential that there be members of the bar with ability, adequate learning and sound moral character. One of the important functions of this court is to admit only such persons to the practice of law in the courts of this state. From the facts pled and admitted, the district judge authorized certain individual prisoners to engage in the practice of law without authority to so act.

If, after a proper hearing, Judge O'Keefe finds that there has been a denial of or undue restrictions upon the prisoners' reasonable access to the courts, appropriate and conventional means must be followed. The inherent power of the supreme court to regulate, supervise and control the practice of law before the courts of this state forbids a district judge from usurping that power by appointing prisoners, not licensed or authorized to the practice of law by this court, to represent fellow prisoners in civil actions in the courts of this state.

Relief in the nature of mandamus in case No. 56,548 is granted. The orders of the district judge appointing KSP inmates Arthur Murley, Jerry Wayne Smith, and Michael Pyle, none of whom are licensed to practice law in Kansas, to appear on behalf of other KSP inmates in civil actions in the district court are vacated. Judge O'Keefe is hereby ordered to cease and desist appointing inmates at the Kansas State Penitentiary to represent other inmates at the Kansas State Penitentiary in district court proceedings.

Case No. 56,771 is by order of this court consolidated with No.

56,548. Relief in the nature of mandamus in case No. 56,771 is denied; the order issued April 5, 1984, in No. 56,771 staying further proceedings in the district court is hereby vacated.

SCHROEDER, C.J., and HOLMES, J., not participating.